Bank of Missouri vs. Franciscus.

15  303
42a  521

BANK OF MISSOURI, APPELLANT VS. JAS. M. FRANCISCUS, RESPONDENT.

1. If a judgment was valid at the time it was rendered, and proceedings have been taken under it, and it is afterwards set aside, the avoidance does not, by relation, affect the proceedings, and make those who instituted them trespassers *ab initio*.

2. A debt due by a bankrupt, contracted before his bankruptcy, is like any other debt against which he has a valid defence. If sued for it, and he fails to plead his certificate he is in the same situation, as all others, who have neglected to plead properly to actions instituted against them.

## APPEAL from St. Louis Circuit Court.

### STATEMENT OF THE CASE.

This was action of trespass *vi et armis,* brought by appellee against appellant in the St. Louis circuit court. Appellant, defendant below, pleaded, first, the general issue, and secondly, that the supposed trespasses detailed in the declaration were done in levying an execution issued out of the office of the clerk of the court of common pleas, in the case of the Bank of the State of Missouri, plaintiff vs. John J. Franciscus & James M. Franciscus, which execution was in proper form, and issued upon a judgment which the said court had full authority to render, having jurisdiction of the parties and subject matter, and which was in full force at the time of the issue and levy of the execution. That the judgment was rendered on the 8th of August, 1842, for $11,184 23 and costs, and an alias execution was issued thereon, on the 24th of Nov., 1842, upon which, and before its return day, and on the 20th January, 1843, the sheriff made the levy for which this suit was lost. To this last plea, J. M. Franciscus, the plaintiff below, replied that the defendants had filed their petition in said court, stating that when said judgment was rendered, the defendants thereon had their petition for benefit of the bankrupt act, pending in the circuit court of the U. S. for the district of Missouri, and had been declared a bankrupt and praying the further proceedings upon the execution be stayed until the proceeding in bankruptcy should be terminated; and that afterwards, at the Sept. term, 1845, of said common pleas court, its said judgment was set aside and the said execution thereon quashed, which was afterwards affirmed by the supreme court at its March term, 1846. To this replication defendant demurred. But the court below overruled the demurrer, and the case went to trial on the general issue. On the trial the appellee gave in evidence the execution and the return on it—prove the seizure of the property mentioned in the return, and that it was made by order of appellant. The property consisted of an exchange broker's stock in trade; such as uncurrent bank notes of various banks of various denominations and amounts—Illinois internal improvement scrip, St. Louis county and city scrip, and divers kinds and amounts of gold and silver coin; and also the furniture of the shop. The latter was bonded and allowed to remain in Franciscus' possession, but the stock in trade was taken by the sheriff, into his possession and safely kept during the litigation between the parties to the execution, and on the termination thereof was redelivered by him to Franciscus three years and three months after the levy. At the time of the levy, notes of the bank of Illinois and of the State bank of Illinios were worth about 50 cts. on the dollar. The Illinois scrip was worth about 60 cents on the dollar. The St. Louis city and county scrip was worth from 62½ to 78 cents on the dollar. The counsel of Franciscus charged him $500 for their services in resisting the levy aforesaid of which $400 were paid upon the commencement of this suit. It appeared that plaintiff's profits were about $400 per month while he was in business. After the levy plaintiff did nothing for a short time, and then went into business with one Worsham, who furnished the capital, but this proving not profitable, was discontinued after about four or five months. After which plaintiff checked it for E. W. Clark & Clark & Bros., until he went into business in New Orleans in 1844. L. A. Benoist & Co., who did a large exchange and brokerage, failed in 1842. G. A. Lindly & Co., who where engaged in the business, failed 1843; and it was said in consequence of the gambling of one of the partners, John J. Franciscus, and plaintiff who had been engaged in the same kind of business failed prior to 1842; and when plaintiff commenced business again in 1842, his capital was $150 00. The record of the case of the bank of the State of Missouri against John J. & James M. Franciscus both in the common pleas and the supreme courts, was given in evidence, which was in substance the same as that in defendant's 2nd plea and plaintiff's replication thereto.

The defendant below prayed the court to declare the law governing this case to be as follows: "If the seizure made by the plaintiff of St. Louis county of the property mentioned in his return upon the execution given in evidence, was duly made under and by virtue of said execution, while the same was in full force; it was issued upon a judgment rendered in the St. Louis court of common pleas in favor of the plaintiff's execution against the drafts therein named on 8th of August, 1842, which judgment was in full force at the time of such levy, then the plaintiff is not entitled to recover." But the court refused so to declare. The defendant also prayed the court to give the jury the following instructions: "Damages cannot be awarded in this case in the shape of interest upon the property or funds levied on and afterwards returned to the plaintiff, except at the rate of six per cent. and upon the actual value in cash of such property and funds during the time the same may have been detained." The court below refused to give the instruction as asked, but made the following addition to it. This is assigned as a direction to the jury with reference to the rate of interest, as such, and the basis on which the same should be calculated," and then gave the instruction as thus modified. The court then instructed the jury on its own motion as follows: "The plaintiff is not entitled to more, in this case for expenses as lawyers' fees, except for such amount as the jury shall find he had paid before the commencement of this suit, but he is entitled to recover by way of damages, for all such other expenses or liabilities as he may have shown by its evidence to have been paid or incurred by him before the commencement of this suit." And on the prayer of the plaintiff the court gave the following instructions to the jury: "The jury in this action may find for the plaintiff, such damages claimed by him in his declartion as they believe from the evidence the plaintiff has sustained. The jury are the judges from the evidence of the value of the property proved to have been taken by defendant."

The jury found a verdict for $7,427 32 against defendant. A new trial was then moved for, assigning the ordinary reasons, and also that the jury gave the plaintiff excessive damages. And the court upon plaintiff's entering a remititur of $100, being the difference between the $100 paid and the $500 charged for fees, overruled the motion.

## POLK, for appellant.

I. The execution in favor of the bank of Missouri vs. John J. & James M. Franciscus, under which the sheriff made the levy for which this suit was brought, was issued upon a regular and subsisting judgment of a court having jurisdiction of the subject matter, and the parties, and there was no irregularity nor defectiveness even in the process itself, nor in the mode of issuing it. On the contrary, the established form of practice was pursued in issuing it. The execution therefore, was not void nor irregular at the time of the levy.

For when the judgment is of the character above described, the execution issued upon it cannot be void unless there is irregularity in the process itself or in the mode of issuing it: Luddington vs. Peck 2 Com. R. 700.

II. The execution not being void, nor even voidable but regular and valid, it was a full justification for the levy which was made in obedience to its mandate, and the court below consequently committed error in sustaining the demand to the defendant's plea which pleaded it as a bar to the action, and also in refusing to give the instruction first prayed by defendant, to the effect that the execution was a defence to this action. Parsons vs. Loyd, 3 Wils. 341; Balk vs. Broadhead, 3 T. R. 183; Higden vs. Conoway, 12 Mo. 295; Jay vs. Barnhardt, 10 Mo. 151; Brown vs. Henderson, 1 Mo. 134; Elliot et al. vs. Piersoll et al., 1 Peters 340; Benton vs. Sweny, 4 Mo. 1.

In the case of Aldrich vs. Aldrich, 8 Metcalf Mass. R. 102, a distress warrant was issued against plaintiff for a tax, and he was arrested upon it, after his discharge as a bankrupt. He brought suit by writ of replevin personal replevin, to be discharged from the arrest,—held, the arrest was lawful, The bankrupt discharge was no valid objection to the arrest.

20

So also Wilman vs. Rush, 7 Metcalf 257, plaintiff arrested by sheriff after his discharge under the insolvent law. Held, that sheriff is not liable in trespass though he knew of his discharge before the arrest was made.

Bangs vs. Strong, Denio 619, execution issued after bankrupts discharge upon a judgment rendered before and levied upon property of defendant, acquired after his discharge. Exactly like this case. Motion to set aside. Ordering to be substained unless plaintiff would sue on judgment in sixty days, and give defendant opportunity to plead his discharge.

In this case the court by no means intimated that the levy made the plaintiff in the execution a trespasser. On the contrary, as a matter of grace, it required plaintiff to sue on his judgment, but expressly holds the levy as security for the debt, in case the defendant would not be able to avail himself of the bankrupt discharge.

IV. But the discharge as a bankrupt is not an absolute and unquestionable exemption of all the bankrupt's property from the satisfaction of all his existing debts. On the contrary it is conditional only.

V. The court below erred in giving the first instruction prayed by plaintiff. That instruction was, that "the jury might find for the plaintiff such damages claimed by him in his declaration as they should believe from the evidence he had sustained."

In his declaration plaintiff claimed damages for the loss of the profits of his business. So that by this instruction the court told the jury that the plaintiff in this action was entitled to recover of the defendant, damages for the loss of the probable profits of his business.

I contend that this is not law. That such profits or damages are too remote and uncertain: McGuire vs. Taylor, 12 Mo. R. 313; Poter vs. Woods & Stocker, 3 Humph. Ten. R. 61; Briysee & et al. vs. Maybee, 21 Windaw 141; Blanchard vs. Ely, 21 ib. 347; 17 Pick. R. 453; 1 Gall. R. 314.

LORD, for respondent.

I. The judgment and execution pleaded by the bank having been vacated, she cannot justify under them. The demurrer to the replication to the amended plea was therefore properly overruled.

Where a party obtains a judgment, which is afterward set aside and vacated, he is not justified in acting under it. 5 Bam. & A. Co. 746-7 Eng. Com. Law R. 250. See also opinion of judges in Paison vs. Loyd, 3 Wilwn. 344 et seq.

"If a man have color of an authority, and afterwards it is vacated and declared to be null, he will be a trespasser ab initio; and if a man obtain judgment irregularly, and afterwards takes out execution, the party will be a trespasser if the judgment be vacated:" 7 Comyn Digest. 5 Ed. 499; 1 Strange 509; Savacool vs. Boughton, 5 Wendell 173; Albee vs. Ward, 8 Mass. 84.

II. All the earnings of Franciscus, after he was declared bankrupt, were exempt from execution and the bank, by directing a seizure of property so earned, became a trespasser. Franciscus vs. Bank, 10 Mo. 27; trespass lies for a levy upon property exempt from execution; 7 Vermont Rep. 465, 2 Sheply Rep. 312.

III. The law governing this case was correctly laid down by the court in the instructions given, and the jury being sole judges of the damages, this court will not interfere with their finding.

1. The first instruction asked for by the bank and refused asserted the same principle already overruled by the court below in overruling the demurrer to plaintiffs' replication, and if the proportion contained in the first point above made the law, then the instruction was properly refused. The second instruction was very properly modified by the court and taken as a whole was properly given.

If the instruction was intended to inform the jury that damages in "the shape of interest"

could only be found at the rate of six per cent, then no fault could be found with it here, for that is just what the instruction says, but if it was intended (as we think it was) to mislead the jury, and to convey the idea to them that the plaintiff below could only recover as damages the interest of the money levied upon, then the addition made by the judge was proper, no harm was done, it made the instruction plain, and it enunciates the case.

The instruction given by the court on its own motion, and the one given at request of plaintiff are unexceptionable.

2. The jury are sole judges of the damages in actions of this nature.

The rule is then laid down by justice Butler. "In actions founded upon torts, the jury are the sole judges of the damages; and therefore in such case the court will not grant a new trial on account of the damages being trifling or excessive:" Buller N. P. 327, 1 Mod. 2; Graham on new trials, page 409, 410 et seq. Duberly vs. Gunning, 4 Tenn. 651; Witford vs. Berkely, 1 Barr 609; Hazart vs. Israel; 1 Binney 240.

In Smith vs. Shaw, Chief Justice Thompson said, "the damages recovered against the defendant appear to us to be very high; but this is a question that cannot be taken into consideration by this court:" 12 Johnson 266    See also 15 Johnson 493.

The case of Pratt vs. Blakey, 5 Mo. 205; was a case of contract, when there was a certain measure of damages.

In the cases where there is no certain measure of damages, the court will not substitute its own sense of what would be the proper amount for the verdict, and will not set aside a verdict for excessive damages, unless there is reason to believe that the jury are actuated by passion or some undue influence perverting the judgment: 4 Shepley 187; 9 Shepley 246; Bampr. vs. Bette, 23 Wendell 85; Bodwell vs. Osgood, 3 Pick. 379; Shute vs. Barrett, 7 Ibid. 82; Coffin vs. Coffin, 4 Mass. 1. In Coffin vs. Coffin, Ch. Just. Parke said, "it is impossible to extract any rule from the numerous decisions and dicta which are so often cited as to become trite, except that any judge, to whom the question is put, whether the verdict shall stand or not, must be satisfied in his own mind that the rule of fair compensation has been departed from; that passion not reason has decided, or that some undue influence has swayed the minds of the jury." See also Neal vs. Lewis, 3 Bay 204.

In Davis vs. Davis, 2 Nott and McCord 81, Justice Johnson said, "there are cases in which excessive damages alone have been made the basis of a new trial, but they are rare; and I trust that this court will never add to the number except in cases of the most imperious necessity.  They are always a subject for the exercise of the sound discretion of the jury; and this court will never interfere, unless they so far exceed all proportion to the injury as necessarily to strike every person at once with the conviction, that the jury have been led away, either by public prejudice or private feeling."

Mr. Graham, in his work on new trials, says this rule applies to actions of trespass: Gahm. on new trials 434; 2 Wilson 205; 3 Wilson 61.

In Sharpe vs. Brice, 2 W. Blackstone 942, Delfey, Chf. Jus., said "in contract the measure of damages is generally matter of account, and the damages given may be demonstrated to be right or wrong.  But in tort a greater latitude is allowed to the jury and the damages must be excessive and outrageous, to require or warrant a new trial. See also, 5 Taunton 442; 10 Serg. & Raule 399.

In Woodward vs. Paine, 15 Johnson's Rep. 493, the court say, "Upon the whole, although the damages are higher than we think they ought to have been, yet, on it an action sounding in tort, the verdict must stand." The case last cited was trespass for a pair of horses, harness and wagon.

From all the cases we say that the defendant will be relieved, and a new trial granted, only in those cases where the jury find outrageous damages, clearly evincing partiality, prejudice and passion: Beach & Eddy vs. Wilburn, decided at Occtober term of this court 1850, Birch justice, last page of his opinion.

Scott, J., delivered the opinion of the court.

This action is evidently founded upon a misconception of a principle of law. That principle is thus stated in 7 Comyn's Dig. 499: "If a man has color of an authority, and afterwards it is vacated and declared to be null, he will be a tresspasser *ab initio;* as if a man obtains judgment irregularly, and afterwards takes out execution, the party (though not the officer) will be a trespasser if the judgment be vacated." It may be remarked, that the term "irregular," as used in the old books, is synonymous with the word void. Parsons vs. Loyd, 3 Wel. 341. The principle, as stated, is not controverted, and is abundantly sustained by the references. If we are not mistaken, the rule will be found applicable to those cases only, in which the cause for vacating the judgment exists at the time of its rendition. Certainly there is nothing in the cases cited, and they have all been examined, which will warrant the inference, that if a judgment is valid at the date of its rendition, and proceedings have been taken under it, and it should be afterwards set aside, that the avoidance by relation will affect those proceedings. We do not conceive that a judgment, once regular, can be vacated; it may be satisfied or extinguished, but we cannot see the end to be obtained by its vacation. If, through inadvertence, an order should be made, vacating such a judgment, on no principle can that act have any retrospective effect. It will not be maintained, that a judgment against a bankrupt, merely because he is such, is even erroneous, much less void. If a bankrupt has obtained his discharge and certificate, and is sued for a debt contracted before his bankruptcy, and he fails to plead his discharge in bar, the judgment obtained against him, under such circumstances, will be as valid as any ever pronounced in a court of record. This court, in an opinion which was amply sustained by authority assented to the doctrine, that an action of trespass cannot be maintained against a sheriff for arresting the body of a certificated bankrupt. The only reason for interfering with the judgment and the proceedings thereon, in which this action originated, was, because the plaintiff, Franciscus, had not obtained his certificate at the date of the judgment. He had instituted proceeding to obtain the benefit of the bankrupt act, and it was held, that the decree in bankruptcy related back to the time of filing his petition, protecting his after acquired property. A debt due by a bankrupt, contracted before his bankruptcy, is like any other debt against which he has a valid defence. If sued for it, and he fails to plead his certificate, he is in the same situation as all others who have neglected to plead their defence to an action prosecuted against them.

That he had not obtained his discharge, so that it might have been pleaded in bar, during the pendency of the suit, does not affect the validity of the judgment. When the judgment was rendered, it was not known that the certificate would ever be obtained, and if obtained that it might be avoided for fraud, or by showing that the debt was of a character that could not be discharged by the bankrupt act. In such a state of things, a court of equity, or the court in which the judgment was rendered, would stay the proceedings, but surely would never vacate the judgment until the creditor had been afforded an opportunity of contesting the validity of the discharge; and if, through inadvertence, such an order should be made, it could have no retrospective effect.

The demurrer to the replication should have been sustained. The other judges concurring, the judgment will be reversed.